# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRINA LOU WELLS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-18-247-SPS** |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, [1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Trina Lou Wells requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the supplemental administrative hearing (Tr. 72, 246). She has a high school education and has worked as a nursing home cook, bar waitress, janitor, teacher assistant, hotel housekeeper, and tire sorter (Tr. 87, 274). The claimant alleges that she has been unable to work since January 23, 2015, due to diabetes, arthritis, carpal tunnel syndrome, right shoulder and knee problems, pneumonia, two hernia repairs, removed gall bladder, spots on her lung, emergency dysplasia, and a low immune system (Tr. 273-74).

## Procedural History

In June 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 12, 246-47). Her applications were denied. ALJ Kenton W. Fulton conducted an administrative hearing and a supplemental hearing and determined that the claimant was not disabled in a written opinion dated July 28, 2017 (Tr. 12-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with frequent reaching, handling, fingering, and feeling bilaterally; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and never climbing ladders, ropes, or scaffolds (Tr. 18). Additionally, the ALJ found the claimant was limited to simple and detailed tasks and instructions (Tr. 18). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a hotel housekeeper, or alternatively, because there was work she could perform in the national economy, *e. g.*, self-service attendant, merchandise marker, and cafeteria attendant (Tr. 23-25).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the opinions of medical expert Dr. Krishnamurthi and consultative examiners, Dr. Danaher and Dr. Chaudry; (ii) failing to establish the mental and physical demands of her past relevant work as a hotel housekeeper; (iii) failing to account for her poor visual acuity and diabetic retinopathy when forming the RFC; (iv) finding there was other work she could perform; (v) failing to properly evaluate whether her mental impairments met the requirements of Appendix 1, Part 404, Subpart P ("the Listings"); and (vi) failing to fully develop the record as to the existence of her mental impairments prior to age twenty-two. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant's diabetes mellitus, peripheral neuropathy, left hip arthritis, degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, right shoulder tendonosis and bursitis, obesity, and major depressive disorder were severe; but that her diabetic retinopathy, visual acuity, hypertension, obstructive sleep apnea, and history of pneumonia were non-severe (Tr. 15-16). The relevant medical records reveal the claimant largely received treatment for these impairments through the Chickasaw Nation (Tr. 367-503, 689-745, 857-928). As to the claimant's mental impairments, she reported she was depressed, tearful, and unmotivated to primary care provider Dr. Angela Torres in June 2014 (Tr. 427-31). Dr. Torres diagnosed the claimant with depression, prescribed an anti-depressant, and recommended counseling, which the claimant declined (Tr. 430-31). By February 2015, the claimant's depression screening was negative and remained negative thereafter (Tr. 462, 470, 700, 882). Numerous providers performed mental status examinations between August 2014 and January 2017, and they were consistently normal (Tr. 444-73, 542-59, 701-04, 861-77).

As to the claimant's vision, Dr. Laura Hill performed a diabetic eye exam on April 24, 2014 and found her visual acuity was 20/25 (Tr. 476-79). Dr. Hill assessed the claimant with, *inter alia,* diabetes with ophthalmic manifestations, diabetic retinopathy (moderate non-proliferative), and diabetic macular edema (Tr. 478-79). She educated the claimant on retinopathy and "possible" clinically significant macular edema, stressing the importance of better diabetes control (Tr. 479). Dr. Hall recommended yearly vision examinations as well as over the counter "readers" for near vision and computer vision (Tr. 479).

The claimant next presented for a diabetic eye exam on November 7, 2016 (Tr. 896-903).  Dr. David Doss found the claimant's visual acuity was 20/30 (Tr. 901).  Dr. Doss also found macular edema in the claimant's eyes, which was similar to her 2014 exam and not clinically significant (Tr. 902).  He assessed the claimant with, *inter alia,* macular edema (right greater than left) and severe non-proliferative diabetic retinopathy (Tr. 902).

On June 27, 2016, Dr. S.A. Chaudry conducted a consultative physical examination of the claimant (Tr. 747-61).  Dr. Chaudry noted the claimant's intelligence level was normal and she was fully oriented (Tr. 748).  He found, *inter alia,* the claimant's visual acuity was 20/50 in her right eye and 20/40 in her left eye, noting the claimant's report that she does not wear glasses (Tr. 748).  The same day, Dr. Chaudry completed a form titled "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (Tr. 751-57).  Regarding the claimant's vision, Dr. Chaudry opined that the claimant could avoid ordinary hazards in the workplace, read very small print, read ordinary newspaper or book print, view a computer screen, and determine differences in shape and color of small objects such as screws, nuts, or bolts (Tr. 754).

Dr. Robert Danaher conducted a consultative mental status examination of the claimant on July 20, 2016 (Tr. 765-71).  He observed that the claimant was alert and oriented; that her speech was logical, goal directed, and fully intelligible; that she wore glasses for close vision; and that she described physical concerns when asked what factors led to her application for disability benefits (Tr. 765).  Dr. Danaher administered the Montreal Cognitive Assessment ("MOCA"), which indicated a "possible mild cognitive impairment" (Tr. 767-68).  He also administered the Wechsler Adult Intelligence Scale III

("WAIS-III"), which produced a verbal score of 62, a performance score of 92, and a full-scale IQ score of 74 (Tr. 768-69). Dr. Danaher diagnosed the claimant with major depressive disorder (Tr. 769). Dr. Danaher also completed a form titled "Medical Source Statement of Ability to do Work-Related Activities (Mental)." (Tr. 762-64). He opined that the claimant was markedly limited in her ability to understand and remember complex instructions, moderately limited in her ability to carry out complex instructions and make judgments on complex work-related decisions, and was not limited at all in her ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions (Tr. 762). As support, Dr. Danaher noted the claimant's WAIS-III verbal score reflected problems with verbal comprehension (Tr. 762).

State agency psychologists reviewed the record in August 2015 and November 2015 and found the claimant's mental impairments were non-severe (Tr. 101-02, 127-29). State agency physicians reviewed the record in August 2015 and November 2015 and found the claimant could perform the full range of medium work (Tr. 103-05, 129-32).

The ALJ called Dr. Subramaniam Krishnamurthi, a board-certified internist and cardiologist, to testify as a medical expert at the supplemental hearing (Tr. 83-86). Dr. Krishnamurthi testified that the claimant's diagnoses were diabetes, peripheral neuropathy, left hip osteoarthritis, and he stated that she experienced "some eye problems." (Tr. 84-85). He concluded that the claimant's impairments did not meet or equal any of the listings, specifically Listings 1.02 (Disorders of the spine) and 11.14 (Peripheral neuropathy) (Tr. 84). Dr. Krishnamurthi opined that the claimant could frequently lift ten pounds; occasionally lift twenty pounds; sit six hours out of an eight-hour work day; stand/walk a

total of six hours out of an eight-hour work day; frequently reach, handle, finger, feel, grasp, and maneuver her hands; occasionally bend, stoop, crouch, and kneel; and never climb ladders, ropes, or scaffolds (Tr. 85).

The ALJ also elicited testimony from a vocational expert ("VE") at the supplemental hearing (Tr. 86-90). The VE testified that the claimant's past relevant work included nursing home cook (DICOT § 315.361-010), bar waitress (DICOT § 311.477- 018), janitor (DICOT § 381.687-014), teacher assistant (DICOT § 099.327-010), hotel housekeeper (DICOT § 323.687-014), and tire sorter (DICOT § 750.687-022) (Tr. 86-87). The ALJ then posed several questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform (Tr. 87-90). As relevant to this appeal, the ALJ posited an individual with the age, education, and work history of the claimant who could perform light work with frequent reaching, handling, fingering, and feeling bilaterally; no climbing ladders, ropes, and scaffolds; and all other postural limitations occasional (Tr. 87). The VE testified such a person could return to the claimant's past relevant work as a hotel housekeeper and could also perform the jobs of self-service store attendant (DICOT §299.677-010), merchandise marker (DICOT § 209.587-034), and cafeteria attendant (DICOT § 311.677-010) (Tr. 87-88).

In his written opinion, the ALJ summarized the claimant's testimony, some of the medical evidence, and all of the opinion evidence (Tr. 15-23). In finding the claimant's diabetic retinopathy and visual acuity non-severe at step two, the ALJ noted she did not testify as to any problems with her vision and that her visual acuity was 20/25 in April 2014 and 20/30 in November 2016 (Tr. 15-16). At step three, the ALJ assessed whether

the claimant met Listing 12.04 (Depressive, bipolar and related disorders) and ultimately concluded that her impairments did not meet or medically equal any listing (Tr. 16-18). In discussing the opinion evidence at step four, the ALJ gave great weight to Dr. Danaher's major depressive disorder diagnosis, but rejected his opinion that the claimant was limited to unskilled work because she successfully performed skilled work in the past, had no history of special education, could drive, and could manage her own finances (Tr. 22). The ALJ also rejected the state agency psychologists' opinion that the claimant's mental impairments were non-severe (Tr. 23). As to Dr. Chaudry's opinion on the claimant's exertional limitations, the ALJ assigned it little weight because it was incomplete, unclear, and inconsistent with his own examination findings and the claimant's hearing testimony but found the remainder of his proposed limitations generally consistent with the record (Tr. 23). The ALJ gave partial weight to the state agency physicians' opinions, finding they were not entirely consistent with the medical evidence as a whole, and instead gave more weight to Dr. Krishnamurthi's expert testimony because it was supported by the entire record, including evidence to which the state agency physicians were not privy to, and reflected a careful review (Tr. 22).

The claimant first asserts that the ALJ erred in evaluating the medical source opinion evidence from medical expert Dr. Krishnamurthi and consultative physicians, Dr. Danaher and Dr. Chaudry. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365

F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of the opinions of Drs. Krishnamurthi, Danaher, and Chaudry, as described above, meets these standards. The ALJ specifically addressed their findings and the Court finds that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant next asserts that the ALJ erred at step four by finding she could return to her past relevant work as a hotel housekeeper without determining the mental and physical demands of this work. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of her past relevant work (both physical and mental), and ultimately decide if her RFC enables her to meet those demands. *See,*

*e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.* at 1023, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025.

At phase two of step four, the ALJ did not elicit any evidence about the demands of the hotel housekeeper job from either the claimant as she performed it or from the VE as it is ordinarily performed, and the Court finds the VE's testimony as to the exertional level and skill level was insufficient to establish such demands in light of the claimant's postural and mental limitations. *See, e. g., Sissom v. Colvin,* 512 Fed. Appx. 762, 768-69 (10th Cir. 2013) (the ALJ "failed to develop the record with 'factual information' regarding the claimant's past relevant work" by relying solely on VE testimony as to the exertional level and skill level of the claimant's past relevant work because such "limited testimony . . . is insufficient to determine the physical and mental work demands of [the claimant's] [past relevant work].")*, citing Winfrey,* 92 F.3d at 1024. Thus, the ALJ was wholly without evidence as to the physical and mental demands of the claimant's past relevant work as a hotel housekeeper, either as she performed it or as it is customarily performed in the national economy. *See, e. g., Westbrook v. Massanari,* 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted]. Ordinarily, this would be reversible error under *Winfrey,* but here it is harmless in light of the ALJ's alternative step five findings of other jobs existing in significant numbers that

the claimant could perform. As demonstrated below, the ALJ's step five findings were proper, and thus his *Winfrey* error became harmless. *See Martinez v. Astrue*, 316 Fed. Appx. 819, 824 (10th Cir. 2009) ("Because we conclude, as discussed in the next section, that the ALJ's step-five finding was proper, we agree with the district court that the ALJ's *Winfrey* error was harmless. Contrary to Ms. Martinez's argument, her capacity to perform the specific requirements of a past sedentary job has no bearing on her capacity to perform different sedentary jobs at step five because the ALJ made findings regarding her specific limitations for step-five purposes.").

The claimant next contends that the ALJ failed to account for her poor visual acuity and diabetic retinopathy when formulating the RFC. The Court agrees that the ALJ is required to consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill v. Astrue,* 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, the ALJ *did* address the claimant's vision by rejecting Dr. Chaudry's opinion *only* as to the claimant's exertional limitations (Tr. 23). In other words, the ALJ adopted Dr. Chaudry's opinion that

the claimant had no visual limitations (Tr. 23). Furthermore, the claimant does not point to any evidence in the record showing that her non-severe visual acuity and diabetic retinopathy, either individually or in combination with her other impairments, caused functional limitations. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work). As the ALJ correctly noted, the claimant did not testify that she had difficulty with her vision and her visual acuity was 20/30 at her most recent diabetic eye exam (Tr. 26).

The claimant also contends that the ALJ failed to include all her limitations in the hypothetical question he posed to the VE, and thus his step five findings are erroneous as well. Specifically, she asserts that she is unable to perform the self-service attendant, cafeteria attendant, and merchandise marker jobs because each job requires a "degree of visual acuity." However, as set forth above, the ALJ clearly considered the claimant's vision and she does not point to any evidence to support the visual limitations she claims. Accordingly, the ALJ was not required to include additional limitations in his RFC assessment, or in his hypothetical question posed to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *see also Adams v. Colvin*, 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ

does not need to account for a limitation belied by the record when setting a claimant's RFC."), *citing Qualls*, 206 F.3d at 1372.

The claimant's remaining arguments all relate to the ALJ's determination that she did not meet or equal the requirements of a listed impairment. Specifically, the claimant contends that the ALJ erred by not expressly considering Listing 12.02 (Neurocognitive disorders), that she meets the requirements for Listing 12.05B (Intellectual disorder), and that the ALJ deprived her of due process by failing to fully develop the record on the existence of her mental impairments before she was twenty-two years old. Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton,* 79 F.3d at 1009 [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three. *Id.*, *citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986). However, the ALJ's failure to make specific findings at step three can be harmless error when "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [c]laimant's qualification under the listings at step three." *Fischer–Ross,* 431 F.3d at 735. A reviewing court may thus "supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the

court] could confidently say that no reasonable administrative factfinder, following the

correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34.

In this case, the ALJ found that the claimant's impairments did not meet or equal

any listing at step three, but only specifically considered Listing 12.04 (Depressive, bipolar

and related disorders) in his written decision (Tr. 16-18).[3] The claimant asserts that the

ALJ erred because he did not specifically mention or discuss Listing 12.02 (Neurocognitive

disorders) at step three, but points to no evidence that she meets this listing.[4] In order to

satisfy the requirements of Listing 12.02, a claimant must meet the paragraph A medical

---

[3] Listing 12.04 contains the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (effective March 27, 2017 to August 21, 2017). In order to meet Listing 12.04, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria. *Id.* The "paragraph B" criteria requires proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The "paragraph C" criteria requires that the claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of her daily life. *Id.*

[4] Listing 12.02 requires the following criteria: (A) Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas: (1) Complex attention; (2) Executive function; (3) Learning and memory; (4) Language; (5) Perceptual-motor; or (6) Social cognition. AND (B) Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; and (4) Adapt or manage oneself. OR (C) a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) Medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder; and (2) Marginal adjustment, that is, a minimal capacity to adapt to changes in her environment or to demands that are not already a part of her daily life. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 (effective March 27, 2017 to August 21, 2017)

documentation criteria and either the paragraph B functional criteria or the paragraph C criteria for serious and persistent mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02 (effective March 27, 2017 to August 21, 2017). Assuming *arguendo* that the claimant meets the medical documentation criteria for Listing 12.02, any error the ALJ may have made in failing to expressly address this listing is harmless because the paragraph B and C criteria for Listing 12.02 is identical to the criteria in Listing 12.04, which the ALJ *did* address. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00A(2), 12.02, 12.04 (effective March 27, 2017 to August 21, 2017). Thus, the ALJ's analysis of the paragraph B and C criteria (and his conclusion that neither criteria were met) for purposes of Listing 12.04 is also substantial evidence that the claimant does not meet Listing 12.02. *See, e. g., Crowell v. Colvin*, 2013 WL 6800821, *5 (W.D. Okla. Dec. 20, 2013) (finding the substantive evaluation for Listing 12.04 applies equally to Listing 12.02); *Bernal v. Berryhill,* 2018 WL 1960117, *2 (D.N.M. April 26, 2018) (finding any failure to consider Listing 12.02 harmless error because the claimant could not have met the requirements of Listing 12.02 in light of the ALJ's analysis of Listings 12.04, 12.05, and 12.06). Moreover, the ALJ specifically discussed the claimant's MOCA score (indicating only "possible mild cognitive impairment"), her full-scale IQ score, and Dr. Danaher's opinion, which was based in part on the claimant's test results when assessing the RFC (Tr. 22). *See Padilla v. Colvin,* 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversible error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Similarly, the claimant asserts that she meets or medically equals Listing 12.05B (Intellectual disorders) and that the ALJ erred because he did not specifically mention or discuss this listing at step three. Listing 12.05B requires the following:

1. Significantly subaverage general intellectual functioning evidence by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (effective March 27, 2017 to August 21, 2017). As an initial matter, the claimant correctly asserts that her full-scale IQ score of 74 accompanied by her verbal IQ score of 62 meets the first prong of Listing 12.05B. It is the second and third prongs that are at issue in this case. In support of her position that she has significant deficits in adaptive functioning and meets the second prong of Listing 12.05B, the claimant suggests that her low MOCA scores and her inability to recall the

name of her pain medication at the supplemental hearing demonstrate an extreme limitation in the functional area of understanding, remembering, or applying information; her inability to keep a job and the fact that she lives with another person for support demonstrate a marked impairment in her ability to adapt or manage oneself; and that she has at least a marked, if not extreme, limitation in her ability to concentrate, persist, or maintain pace because her MOCA score reflects that she failed to draw a cube and a clock accurately, perform serial 7's, repeat two sentences, recall five words, or recite any words beginning with "F" within one minute. In other words, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). As discussed above, the ALJ extensively analyzed Dr. Danaher's opinion at step four, specifically considered the claimant's cognitive testing at step four, and further acknowledged her poor performance on these tests in his paragraph B analysis at step three (Tr. 22). These findings provide substantial evidence for the ALJ's determination that the claimant's mental impairments did not meet or equal any listing, including Listing 12.05B. *See Fischer-Ross*, 431 F.3d at 734 (No "remand for a more thorough discussion of the listings" is required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."). In any event, the paragraph B criteria for Listing 12.04 are also identical to the adaptive functioning requirements found in Listing 12.05B(2). When the ALJ's paragraph B analysis is applied to Listing 12.05B, the claimant clearly does not meet the significant deficits in adaptive functioning requirement and is therefore precluded from qualifying

under this listing at step three. Thus, "any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless." *Fischer-Ross,* 431 F.3d at 735.

Nonetheless, the claimant last contends that the ALJ failed to fully develop the record on the issue of whether her mental impairment began before she turned twenty-two years old, the third prong of Listing 12.05B. The ALJ has an affirmative duty to fully and fairly develop the record as to any impairment suggested by the evidence. *See Hawkins,* 113 F.3d at 1164; *Henrie v. United States Department of Health & Human Services,* 13 F.3d 359, 360–61 (10th Cir. 1993). This duty is heightened when, as here, a claimant was unrepresented by counsel at the administrative hearing. *See Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). Nevertheless, the ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins,* 113 F .3d at 1168. Rather, he must use reasonable good judgment to ensure that the record fully and fairly addresses material issues. *See id.*

The only evidence the claimant offers as support that her mental impairments began before she was twenty-two years old is her own testimony that her aunt "drew" social security on her and her sister when they were children (Tr. 37-38). However, as the ALJ correctly noted, the claimant did not allege a mental condition at the time of her application; she has no history of special education classes; she had normal cognition, full orientation, an appropriate affect, and intact memory at numerous mental status examinations; she performs significant daily activities; and she successfully performed skilled work in the past (Tr. 17-18, 21-22). Given the lack of evidence that the claimant's mental impairments

contributed to her inability to work, any error the ALJ may have made in failing to develop the record as to the existence of these impairments prior to age twenty-two is harmless. *See Bland v. Astrue,* 432 Fed. Appx. 719, 723 (10th Cir. 2011) (finding no error where the ALJ did not address Listing 12.05C (Mental retardation) because the claimant completed eleventh grade in regular classes and had a successful work history comprised of both unskilled and semi-skilled work, which was inconsistent with an onset of the mental impairment before age twenty-two); *See also Cowan v. Astrue,* 552 F.3d 1182, 1191 (10th Cir. 2008) ("The ALJ found that Mr. Cowan 'previously worked with these impairments, which suggests these conditions would not currently prevent work.' . . . Mr. Cowan does not challenge these findings on appeal. . .").  In any event, the ALJ's determination that the claimant did not have significant deficits in adaptive functioning is supported by substantial evidence as set forth above.  Absent significant deficits in adaptive functioning, evidence that the claimant's mental impairments began prior to age twenty-two is immaterial because Listing 12.05B requires that all three prongs are met.

The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform light work with the aforementioned limitations is thus well supported by substantial evidence.  *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding.  We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d at 949.

**Conclusion**

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 16th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**